### SEEGERS v. GIBBES, MAYOR.

1. CITIES AND TOWNS—WATER WORKS.—The act of March 2, 1896, providing for erection of water works, &c., is intended to apply to cities in which there are no such works, and the act of 9th March, 1896, is intended to apply to cities which already have a water works system, but which desire to enlarge it, and at the election for an issue of bonds for enlarging a system already installed there need not be elected commissioners of public works.

2. IBID.—CONSTITUTION—GEORGETOWN.—The amendment to the Constitution as to limit of bonded debt of certain cities (23 Stat., 616), requiring all the revenue arising from water works to be devoted solely to the maintainance and operation of the same applies only to the city of Georgetown, and said amendment also repeals the provisions of section 5, of art. X., of the Constitution, as to the fifteen per cent. limit of bonded debt of territory included in different municipal corporations, so far as the same relates to the cities therein mentioned.

Petition by Jno. C. Seegers against T. H. Gibbes, Mayor, Wm. D. Melton *et al.,* as aldermen of the city of Columbia, in this Court, to have the city authorities enjoined from issuing certain bonds.

The following is so much of the petition as states the material facts:

"3. That the assessed value of all the taxable property of the city of Columbia for State taxation next preceding the filing of this petition, as appears from the books of the county auditor for Richland County, is $7,836,398.

"4. That the present bonded indebtedness of the city of Columbia is $925,548, composed as follows: Old bonded city debt, $850,548; water works bonds outstanding, $75,000; besides which and in addition thereto, there is now outstanding a contingent liability of the city of Columbia aggregating $162,000, being the unearned interest on $200,000.00 of canal bonds, the interest coupons of which were guaranteed by the city under the provisions of an act of the General Assembly of this State of the 24th December, 1887—19 Stat., 1097; which said act authorized and requires the levy of a sufficient tax to promptly pay the same, and which tax,

together with the other taxes of the city, shall not exceed two per cent. of the assessed value of the property of the city in any one year. That under the powers contained in the act to incorporate the board of trustees of the Columbia Canal, and for other purposes connected therewith—19 Stat., 1090—the said board issued $200,000 six per cent. bonds (the coupons of which are guaranteed by the city as aforesaid), and secured the same by a mortgage upon the said canal and appurtenances and the lands held therewith; and under the powers contained in the act amendatory thereto of 24 December, 1890—20 Stat., 967—sold and conveyed the Columbia Canal before the same was completed to the Columbia Water Power Company, subject to all the contract liabilities and obligations made and entered into by the said board prior to such sale and transfer, amongst which obligations was that of paying the interest coupons on said canal bonds promptly as they should mature, and the said Water Power Company, in addition thereto and as security for the prompt payment of the said coupons, has deposited with the National Loan anad Exchange Bank of the city of Columbia $18,000 West Shore R. R. Co. four per cent. gold bonds, maturing in the year 2361, guaranteed by the New York Central and Hudson R. R. Co., with interest coupons attached, payable semi-annually.

"5. That the territory embraced within the city of Columbia is comprised within the territorial limits of Columbia Township, a corporate political subdivision of this State, and the assessed value of all taxable property in Columbia Township outside the limits of the city, as appears from the county duplicate of Richlanad County, is $2,375,479, making, together with the property within the city, a total of $10,211,877; and the said Columbia Township now has an outstanding bonded indebtedness of $19,700, against which there is now held in the hands of the Sinking Fund Commissioners for Richland County and applicable to the payment thereof the sum of $12,640.27, leaving a balance unprovided for of $7,059.73. That the said $12,640.27 in the hands of

the sinking fund commissioners as aforesaid, is the balance of the proceeds of the tax levied upon the property of the said township annually for the purpose of paying the interest and meeting and retiring the said bonds.

"6. That the city of Columbia is now the owner of and operating a water works plant and system, but the same has become inadequate to supply the needs of the city, and on the 11th day of April, 1905, a petition duly signed by a majority of the freeholders of the said city, as shown by the tax books of the said city, was presented to the city council of said city, asking that an election be ordered, submitting to the qualified electors of the said city the question:

" 'Whether for the purpose of enlarging, extending and repairing its water works, water works system and plant, the city shall issue coupon bonds, as provided by law, to the amount of $400,000, or so much thereof as may be legally issued by the said city.'

"7. In accordance with and pursuant to the said petition of freeholders, and under the provisions of the act of Assembly of 9th March, 1896, and acts amendatory thereto, being now section 2021 of the Code of Civil Laws of this State, the city council of the city of Columbia, in council assembled, by resolution ordered the said election, and requested and authorized the commissioners of election of Richland County to conduct the same according to law; and thereafter the said commissioners of election, prior to said election, published due notice of said election, as required by law, for the 9th May, 1905, in *The State* and *The Record,* two daily papers published in the city of Columbia.

"8. That the said election was duly held on the 9th May, 1905, and a majority of the voters voting at said election voted in favor of the issue of said bonds, as petitioner is informed and believes, and the result is about to be so declared by said city council by ordinance, and in pursuance of said election, the city council are preparing to issue and are about to issue $400,000 coupon bonds for the purposes

aforesaid, and to deliver the same to its water works commission for said purpose.

"9. Your petitioner, upon information and belief, alleges that the said election is illegal and void, and not sufficient to authorize the issue of any bonds, for the reason:

"a. That no 'Commissioners of Public Works' were voted for or elected at said election, as is provided for in section 2009, of vol. I., of the Civil Code of Laws of South Carolina.

"b. Petitioner is informed and believes the city of Columbia and the said city council do not intend to devote the entire revenue of its water works as enlarged, extended and repaired as contemplated, solely and exclusively to the maintenance and operation of the same. Whereas, your petitioner submits that by the constitutional amendment of 1901, their doing so is made a condition of the exercise of the power to issue bonds therein referred to, and your petitioner further submits that said city and city council should be required to do so.

"10. Your petitioner is informed and believes that the city council of Columbia are without authority to issue $400,000 worth of bonds for the purposes aforesaid, for the reason that:

"a. $400,000, in addition to the present bonded debt of the city, including the guarantee on the canal bonds of the coupons thereof, and the proportion of the bonded debt of Columbia Township chargeable to its taxable property within the city, will contravene section 5, of article X., of the Constitution of this State, in that it will exceed fifteen per cent. of the taxable property within the limits of the city.

"b. The city council of Columbia claims that the amendment of 1901 to section 7, of article VIII., of the Constitution, which is as follows: '*Provided,* That the limitations imposed by this section and by section 5, article IV., of this Constitution, shall not apply to bonded indebtedness incurred by the cities of Columbia, Rock Hill, Charleston and Florence, where the proceeds of said bonds are applied solely for the purpose, establishment, maintenance or increase of

water works plants, sewerage system; and by the city of Georgetown, when the proceeds of said bonds are applied solely for the purchase, establishment, maintenance or increase of water works plant or sewerage system, gas and electric light plants, where the entire revenue arising from the operation of such plants or systems shall be devoted solely and exclusively to the maintenance and operation of the same, and where the question of incurring such indebtedness is submitted to the freeholders and qualified voters of such municipality, as provided in the Constitution, upon the question of other bonded indebtedness,' in repealing the eight per cent. limitation as to the said cities, where the increase of bonded indebtedness is for the purpose therein specified, carried with it and also repealed by necessary implication the fifteen per cent. limitation provided in section 5, article X., as to the said cities, where the increase of bonded indebtedness is for said purposes; whereas, your petitioner submits that said fifteen per cent. limitation is wholly unaffected by said amendment repealing said eight per cent. limitation as aforesaid, and that same still remains in full force as to said cities, even when the proposed increase is for the purposes aforesaid.

"c. The said city council also claims that the clause in said amendments, 'where the entire revenue arising from the operation of such plants or systems shall be devoted solely and exclusively to the maintenance and operation of the same,' applies only to the city of Georgetown; whereas, your petitioner submits that it also applies to the other cities named in said amendment, including the city of Columbia; and further submits that, inasmuch as the city of Columbia does not intend that the entire revenue of its water works as enlarged, extended and repaired, as contemplated, shall be devoted exclusively to such uses, the said city has no power to increase its bonded indebtedness to any amount under the terms of said amendment.

"II. Your petitioner submits that under a proper construction of section 7, of article VIII., as amended, and section

5, of article X., of the Constitution, the city of Columbia, if otherwise authorized to do so, has power to issue only $75,097 of bonds for the purposes aforesaid, as is shown by the following table:

| | | |
|---|---:|---:|
| Taxable property of the city is $7,836,398 | | |
| Fifteen per cent. of which is... | | $1,175,459 70 |
| Old bonded debt of the city..$850,548 00 | | |
| Water works bonds.............. 75,000 00 | | |
| Proportion debt of Columbia | | |
| Township .................. 12,815 00 | | |
| Outstanding guaranteed inter- | | |
| est coupon canal bonds... 162,000 00 | | 1,100,362 00 |
| Balance ........................ | | $75,097 70 |

"12. That your petitioner is informed and believes that the said city council will issue bonds to the amount of $400,000, unless restrained by the order of this Court.

"Wherefore, he prays that the respondents and the city of Columbia be perpetually restrained and enjoined from issuing any bonds in excess of the said sum of $75,097.70, and from delivering the same to its water works commission, and for such other and further relief as may be just, and your petitioner will ever pray, &c."

The return to the rule herein is as follows:

"1. They admit the allegations of the first eight paragraphs of the petition, and also the allegation of paragraph 12 thereof.

"2. Answering paragraph 9, they admit that no commissioners of public works were voted for or elected at said election, as alleged in said paragraph, but submit that the same is not necessary nor required for the validity of said election, for the reason said election was held under the provisions of sections 2021 and 2022 of the Civil Code of Laws of South Carolina, being an act entitled 'An act to authorize special elections in any incorporated city or town in this State for the purpose of issuing bonds for corporate pur-

poses,' approved 9th March, 1896—22 Stat., 88, and acts amendatory thereof—which does not require the election of commissioners of public works at such special election; and was not held under the provisions of sections 2008-9 of said Code, being the act entitled 'An act to authorize all cities and towns to build, equip and operate a system of water works and electric lights, and to issue bonds to meet costs of same,' approved 2d March, 1896—22 Stat., 83—as alleged in the petition; and further, respondents allege the said city of Columbia is now and was prior to the passage of the act of 2d March, 1896, the owner of and operating a system of water works and plant under the provisions of its charter, and already had and still has its duly elected and qualified water works commission, composed of five citizens, electors and freeholders of the city, under whose care and supervision the best source of water supply, plans and specifications for the repair, enlargement and extension of the water works plant and system have been procured and matured, and for the carrying out of which said bonds were voted and are now about to be issued and turned over to said commission.

"Further answering paragraph 9, they admit they do not intend to devote the entire revenue arising from the operation of its water works system to the maintenance and operation thereof, for the reason that the same would be more than sufficient for this purpose, but they do intend to so devote so much thereof as may be necessary. But they allege that under the amendment of 1901 to section 7, of article VIII., of the Constitution, the provision that 'the entire revenue arising from the operating of said plants or systems shall be devoted solely to the maintenance and operation of the same,' relates only to the city of Georgetown, and not to the other cities named therein.

"3. Answering paragraph 10, they allege that under the facts alleged in the petition, they are by the Constitution and laws of this State vested with full power and authority to

issue $400,000 of bonds for water works purposes, for the reason:

"That in the absence of constitutional or statutory limitations, municipal corporations have the inherent power to contract debts to any amount for a proper public corporate purpose; that the limitation of eight per cent. of the value of its taxable property as valued for State taxation, contained in section 7, of article VIII., and section 5, of article X., of the Constitution of this State, is a limitation upon this power; and the provisions in section 5, of article X., providing: 'Whenever there shall be several political divisions or municipal corporations covering or extending over the same territory or portions thereof possessing a power to levy a tax or contract a debt, then each of such political subdivision or municipal corporations shall so exercise its power to increase its debt under the foregoing eight per cent. limitation that the aggregate debt over and upon any territory of this State shall never exceed fifteen per centum of the value of all taxable property in such territory as valued for taxation by the State,' is a restriction upon the exercise of the power under said eight per cent. limitation. And when by the adoption and ratification of the amendments to article VIII., section 7, the eight per cent. limit was removed for the city of Columbia, the restriction upon the exercise of the limit imposed by the eight per cent. clause necessarily fell with it; and they insist that under the amendment the city of Columbia has power to issue bonds for the purpose named under the conditions named to the full extent authorized by the election.

"5. Answering paragraph 11, they allege that even if the fifteen per cent. restriction contained in section 5, of article X., of the Constitution of 1895, applies, notwithstanding said amendment of section 7, of article VIII. (which they deny), the amount of bonds as stated in the petition which the city is authorized to issue must be enlarged by the addition thereto of the items $162,000 unearned guaranteed canal coupon bonds, and by $7,398.57, the difference between $541,649, the proportion of the bonded debt of Columbia

Township properly chargeable to the city territory, and $12,815, the amount improperly charged in the statement in the petition, for the reasons:

"a. The guarantee of the city on the interest coupons is now but a contingent liability fully secured by the mortgage property and the deposit of the water power company, and is not a bonded debt, within the meaning of the Constitution.

"b. Even if such liability is to be deemed a part of its bonded debt, the amount with reference to the constitutional limitation of indebtedness should not be regarded as the aggregate of the interest coupons to the maturity of said bonds, but only such amount as according to the principle of the standard annuity tables would yield at six per cent. $12,000 per annum for thirteen and one-half years (the period to maturity of the bonds), to wit: the sum of $111,540.

"c. The $12,640.27 now in the hands of the Sinking Fund Commission for Richland County is the accumulations from the annual taxes levied under the acts of the legislature for the purpose of creating a sinking fund for payment of these bonds before they mature, and when they mature, which under the law is solely applicable to the retirement of the said township bonds and in contemplation of law, will never again have to be collected by taxation; therefore, the $7,060, the amount now unprovided for by taxes collected, is the proper outstanding bonded debt of Columbia Township, upon which the proportion should be estimated, and not $19,700, as shown by said tables. Respondents therefore submit that in any event they should not be restricted to an issue less than $244,495, or $132,955."

*Mr. J. S. Muller,* for petitioner (oral argument).

*Messrs. H. N. Edmunds* and *Allen J. Green,* contra (oral argument).

October 17, 1905. The opinion of the Court was delivered by

Mr. Justice Woods. This proceeding in the original jurisdiction of this Court was brought by the petitioner, John C. Seegers, a taxpayer and freeholder of the city of Columbia, on behalf of himself and all others in like situation, who will come in and share the expense of the cause, to enjoin the city council from issuing bonds for a greater amount than $75,097.70 for the purpose of enlarging, extending and repairing the city water works, the allegation being that the council is about to issue illegally $400,000 of bonds for that purpose. The facts are not in dispute, and they are fully set out in the petition and answer.

The petition first charges that the statute under which the election was held to authorize the issue of bonds to the amount of $400,000 required that "Commissioners of Public Works" should be voted for, and as no such officers were elected, the entire election was illegal, and the issue of the bonds would be without authority. The act of March 2, 1896 (Civil Code, secs. 2008, 2009), authorizes cities and towns to construct and operate water works, and to raise funds for that purpose by the issue of bonds, but requires such bond issue to be approved beforehand by the qualified electors at an election held by the municipal authorities. This act requires that at such election three citizens shall be elected "Commissioners of Public Works," who are vested with authority to sell and dispose of the bonds, and to build, operate and control the water works. It will not be doubted if the election is to be referred to this statute, the failure to elect the commissioners of public works would invalidate the election, because without these officers the whole scheme contemplated by the act would be defeated. This act relates to the *construction, purchase and operation* of water works and electric light plants, and obviously was intended to carry into effect section 5, of article VIII., of the Constitution of 1895, which is as follows: "Cities and towns *may acquire, by construction or*

*purchase,* and may operate water works systems and plants
for furnishing lights, and may furnish water and lights to
individuals, firms and private corporations for reasonable
compensation: *Provided,* That no such construction or pur-
chase shall be made except upon a majority vote of the
electors in said cities or towns who are qualified to vote on
the bonded indebtedness of said cities or towns."

On the 9th day of March, 1896, another act was passed
(Civil Code, secs. 2021, 2022), which provided: "That it
shall be the duty of the municipal authorities of any incor-
porated city or town of this State, upon the petition of a
majority of the freeholders of said city or town, as shown by
its tax books, to order a special election in any such city or
town for the purpose of issuing bonds for any corporate
purpose set forth in said petition: *Provided,* That the aggre-
gate bonded indebtedness of any city or town shall never
exceed eight per centum of the assessed value of the taxable
property therein" (22 Stat., 88). No mention is made in
this act of the former statute of March 2, 1896, above recited,
though it had been passed only seven days before. This
last statute of March 9, 1896, was subsequently amended,
and at the time of the election here under consideration the
portion material to this discussion read as follows: "It shall
be the duty of the municipal authorities of any incorporated
city or town of this State, upon the petition of a majority of
the freeholders of said city or town, as shown by its tax books,
to order a special election in any such city or town for the
purpose of issuing bonds for the purchasing, repairing or
improving of city or town hall, or park or grounds therefor,
markets and guard house, *enlarging, extending or establish-
ing electric light plants or other lights, or water works, or
sewerage,* erecting, repairing or altering school buildings, fire
protection purposes, improvement of streets and sidewalks,
or any corporate purpose set forth in said petition: *Provided,*
That the aggregate bonded indebtedness of any city or town
shall never exceed eight per centum of the assessed value of
the taxable property therein." Civil Code, section 2021.

This act contains no requirement for the election of commissioners of public works.

By referring to the portions of the Constitution and statutes we have italicized, it will be seen the statute first enacted was intended to provide for the construction and operation of water works and electric light plants where none had existed, and it was, therefore, reasonable that the General Assembly should require the election of commissioners of public works—new officers to take charge of a new municipal enterprise. The distinct characteristic of the latter act is that it provides for the issue of bonds not only for establishing, but for enlarging or extending water works and other public works. When these public works are already in existence under the management of municipal officers already provided, there would be far less, if any reason at all, to require a complete change of administration upon their enlargement or extension. It may be, as far as these acts are *in pari materia*, that is, as far as they both relate to the *establishment* of water works, they must be construed as one act, and that the later act would not justify the issue of bonds for the construction and operation of water works where none had been in operation before, in pursuance of an election which did not include the choice of commissioners of public works. But that is not the question here, for the city of Columbia already has water works in operation and under the management of its municipal officers, and although the site and mechanical construction may be entirely new, there would still be nothing more than the enlargement or extension of a specific public enterprise already in existence and in operation. The act of March 2, 1896, has no application, and the act of March 9, 1896, as amended, to which the election must be referred, does not require the election of commissioners of public works.

It is next contended the bond issue will be illegal because "the city of Columbia and the said city council do not intend to devote the entire revenue of its water works as enlarged, extended and repaired, as contemplated, solely and .exclu-

sively to the maintenance and operation of the same."

2        The provision of the Constitution on which the petitioner relies as requiring the city of Columbia to devote the entire revenue of its water works to the purposes mentioned, is so obviously limited in its application to the city of Georgetown that it is only necessary to quote the amendment itself to make the point clear: *"Provided,* That the limitation imposed by this section and by section 5, article IV., of this Constitution, shall not apply to bonded indebtedness incurred by the cities of Columbia, Rock Hill, Charleston and Florence, where the proceeds of said bonds are applied solely for the purchase, establishment, maintenance or increase of water works plants, sewerage system; and by the city of Georgetown, when the proceeds of said bonds are applied solely for the purchase, establishment, maintenance or increase of water works plant or sewerage system, gas and electric light plants, where the entire revenue arising from the operation of such plants or systems shall be devoted solely and exclusively to the maintenance and operation of the same, and where the question of incurring such indebtedness is submitted to the freeholders and qualified voters of such municipality, as provided in the Constitution, upon the question of other bonded indebtedness." If the intention had been to place Georgetown and the other cities mentioned upon the same footing as to the conditions upon which the municipal debt could be increased beyond eight per cent. of the value of the taxable property, and the purposes to which the proceeds of the bonds and the earnings of the public works should be applied, respect for the intelligence of the framers of the amendment requires us to think they would have merely placed the word "Georgetown" after "Florence," and omitted what would have been the useless repetition of many words. The plain meaning is, the city of Georgetown is allowed to exceed the eight per cent. limit for gas and electric light plants, as well as for water works and sewerage, while the excess as to the other cities is restricted to water works and sewerage; and, on the other hand,

Georgetown is restricted in the use of the revenue arising from these public enterprises to their maintenance and operation, while the other cities are not so restricted.

The petitioner next contends that though the amendment to the Constitution last above quoted allows the city of Columbia to incur a bonded debt exceeding eight per cent. of the taxable property of the city itself, the amendment did not affect the following provisions of section 5, article X., of the Constitution: "And wherever there shall be several political divisions or municipal corporations covering or extending over the territory, or portions thereof, possessing a power to levy a tax or contract a debt, then each of such political divisions or municipal corporations shall so exercise its power to increase its debt under the foregoing eight per cent. limitation that the aggregate debt over and upon any territory of this State shall never exceed fifteen per centum of the value of all taxable property in such territory as valued for taxation by the State. *.* *" It is admitted if this limitation of fifteen per cent. is unaffected by the amendment, the issue of $400,000 of bonds would be illegal, as the aggregate debt of the "several political divisions or municipal corporations" covering the territory embraced in the city of Columbia would exceed fifteen per cent. of the taxable property of such territory. But for the unfortunate slip in making the amendment of February 8, 1901 already quoted, apply to section 5, article IV., which relates to an entirely different subject, instead of to section 5, article X., this question could not arise, for "the limitation" removed as to the amount of the bonded debt of the city of Columbia and other cities mentioned would have referred obviously to the fifteen per cent. limitation, as well as to the eight per cent. limitation, both being mentioned in that section. It must be confessed this mistake has given rise to doubt and confusion. The amendment by its terms, nevertheless, removed the eight per cent. limitation as to the cities mentioned, because that limitation is provided in section 7, article VIII., which is expressly referred to in the amendment, and hence section 5, article X.,

35—72

was inconsistent with the amendment, as far as it provided for an eight per cent. limitation, and this eight per cent. limitation there repeated, necessarily was also taken away. *Bray* v. *City Council of Florence,* 62 S. C., 57, 39 S. E., 810.

It is true, the fifteen per cent. limitation might operate without the eight per cent. limitation, but the terms of section 5, article X., under discussion, indicated these limitations were intended to operate together, the former to be a restriction on the latter, and hence we think the reasonable view is that they fell together. If the fifteen per cent. limitation should be held in force, notwithstanding the repeal of the eight per cent. limitation, the result would be that one municipal corporation could, by contracting a bonded indebtedness amounting to fifteen per cent. of its taxable property, exclude another municipal corporation or political division of the State limited to the same territory from incurring any bonded indebtedness whatever, however great might be the necessity. To illustrate: a city coterminous with a school district might issue bonds to the amount of fifteen per cent. of the taxable property of the common territory, and thus forever prevent the issue of bonds by the school district, though the necessity might be ever so great. The repeal of the eight per cent. limitation defeated the original constitutional scheme as to the cities mentioned for the limitation of municipal indebtedness, of which the fifteen per cent, limitation was a part. Even, however, if it be considered the mistake in the enactment of the constitutional amendment made this question a knot which cannot be untied, in cutting it we have effected the manifest purpose that the amendment was intended to serve.

The conclusions reached as to the questions herein discussed make the consideration of the other questions presented unnecessary.

The judgment of the Court denying the petition has already been filed.

*The* CHIEF JUSTICE *did not participate in this opinion because of illness.*